UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-60677-BLOOM

PETER DAVIS,

       Plaintiff,

v.

SHERIFF GREGORY TONY, *et al.*,

       Defendants.

_____/

<u>**ORDER ON MOTIONS TO DISMISS**</u>

    **THIS CAUSE** is before the Court upon the Motions to Dismiss filed by Defendants United States Department of Homeland Security ("DHS"), ECF No. [64], and Gregory Tony in his official capacity as Sheriff of Broward County ("Sheriff"), ECF No. [66] (together, the "Motions").[1] Plaintiff Peter Davis ("Plaintiff" or "Davis"), who is proceeding *pro se*, did not timely file responses to the Motions.[2] The Court has carefully considered the Motions, the record in this case,

_____

[1] Although the record in this case reflects that a summons was issued as to Immigration and Customs Enforcement ("ICE"), Davis alleges that "Immigration and Customs [E]nforcement is a division of the Department of Homeland Security, responsible for immigration enforcement," ECF No. [44] ¶ 9, and uses DHS and ICE interchangeably in asserting his claims. *See, e.g.* ECF No. [44] ¶ 67 ("Count VI Fourth Amendment Claim Against DHS/ICE. The Court therefore analyzes the arguments made by DHS as applying to both DHS and ICE. Similarly, Davis asserts claims against the Sheriff and the Broward Sheriff's Office ("BSO"), *see, e.g.* ECF No. [44] ¶ 48, but alleges that "Gregory Tony is the Sheriff of Broward County [and] is the Chief Law Enforcement Officer and policy maker for the Broward County Sheriff's Office." *Id.* ¶ 8. Davis also alleges that "Sheriff Tony is sued in his official capacity," *id.* ¶ 8. As such, the Court analyzes the arguments made by the Sheriff as applying to both Tony and BSO.

[2] Davis belatedly requested an extension of time to file an "answer brief," which the Court construed as a request for an extension of time to file responses to the Motions. As such, the Court denied the request on the basis that Davis had not adequately explained his inability to seek the extension prior to the expiration of the applicable deadlines. *See* ECF No. [69]. Davis nevertheless filed a response to DHS's Motion, *see* ECF No. [70], to which DHS filed a reply, ECF No. [75].

including Plaintiff's belated response, ECF No. [70], the applicable law, and is otherwise fully advised. For the reasons that follow, the Motions are granted in part and denied in part.

## I.    BACKGROUND

The Court assumes the parties' familiarity with the procedural history in this case. In the Second Amended Complaint, ECF No. [44] ("SAC"), Plaintiff alleges a violation of his Fourth Amendment rights, a violation of the Administrative Procedures Act ("APA"), false imprisonment, violation of his rights under the Florida Constitution, and denial of the right to access the courts, arising from his continued detention in state custody pursuant to an immigration hold.

In pertinent part, Plaintiff alleges that he was arrested on September 15, 2017 by the Hallandale Beach Police Department, charged with felony offenses, and transported to Broward County Main Jail. *See* ECF No. [44] ¶ 11. While being processed at the jail, Plaintiff's fingerprints were sent to the Federal Bureau of Investigation ("FBI"), which in turn forwarded Plaintiff's biometric information to DHS and Immigration and Customs Enforcement ("ICE"). *Id*. ¶ 13. Plaintiff is a citizen of the Bahamas. *Id*. ¶ 7. According to Plaintiff, at the time he was initially processed at the jail, there were no flags, warrants, or actions directed to the Broward Sheriff's Office ("BSO") or DHS/ICE with respect to Plaintiff. *Id*. ¶ 14. Plaintiff alleges further that he posted a bond and was released from jail on September 21, 2017. At a status hearing held on October 23, 2017, Plaintiff was informed of a change in the charges against him and was remanded back into BSO custody. *Id*. ¶¶ 15-16.

According to Plaintiff, upon being re-booked into state custody, there were no holds or warrants pending from any agencies or counties. *Id*. ¶ 17. As a result, Plaintiff's attorney proceeded to coordinate with the bond company to arrange for Plaintiff to remain on bond with respect to the new charges. *Id*. ¶ 18. According to Plaintiff, he saw and spoke to a DHS/ICE officer a couple of

days later but was not informed that he was subject to a warrant or immigration hold. *Id*. ¶ 19. Nevertheless, shortly thereafter, he was informed by the bond company that BSO was reporting an immigration hold, and that Plaintiff could not be bonded out of custody. *Id*. ¶¶ 20-21. Plaintiff checked the inmate messaging kiosk system and saw that an immigration hold, which was not there before the DHS/ICE officer's visit, was listed along with the state charges. *Id*. ¶ 23. Plaintiff has never been provided with a copy of any documentation from BSO, DHS, or ICE to explain why he is subject to an immigration hold. *Id*. ¶ 24. Plaintiff remained in custody despite a Broward County court order noting that the bond was discharged in error. *Id*. ¶¶ 25-26. As a result, Plaintiff was unable to secure pretrial release and was unsuccessful in his attempts to remove the immigration hold. *Id*. ¶¶ 28-29, 31-32. Plaintiff also alleges that the processes and law library to which he has access as a *pro se* are insufficient. *Id*. ¶¶ 32A-F.

Plaintiff therefore asserts claims against the Sheriff and DHS (collectively, "Defendants"). Specifically, Plaintiff asserts claims against the Sheriff for violation of his Fourth Amendment rights under 42 U.S.C. § 1983 (Count 1); false imprisonment (Count 2); violation of his right to be free from unreasonable searches and seizures and due process under the Florida Constitution (Counts 3 and 4); and violation of his right to access the courts (Count 7). In addition, Plaintiff asserts two claims against DHS for violation of the APA (Count 5), and violation of his Fourth Amendment rights (Count 6). Plaintiff seeks, in pertinent part, declarations that Defendants' actions violate Plaintiff's rights and the law, and that the law library is inadequate; a permanent injunction against Defendants enjoining them from continuing to detain him and placing holds on his jail roster; an order directing Broward County officials to provide a proper law library and proper access; the immediate removal of the immigration hold from Plaintiff's jail roster and Plaintiff's release; in addition to a stay of removal, damages, and attorney's fees and costs. In the

Motions, Defendants seek dismissal of the SAC for lack of subject matter jurisdiction and failure to state a claim.

## II.     LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1), and for failure to state a claim under Rule 12(b)(6).

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342,

1352 (11th Cir. 2006). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). When considering a motion to dismiss, the Court construes the pleadings broadly and views the allegations in the complaint in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016); *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "A 'factual attack,' on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at 1529); *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("By contrast, a factual attack on a complaint challenges

the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.").

"In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). As such, "[w]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1), the district court is free to independently weigh facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

In cases where the defendant challenges the complaint under both Rules 12(b)(1) and 12(b)(6), the court should consider whether there is any overlap between the jurisdictional inquiry and the merits. "[W]here a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claims under Rule 12(b)(1) or Rule 12(b)(6). Or both." *Brownback v. King*, ––– U.S. ––––, 141 S. Ct. 740, 749 n.8 (2021). However, where the "overlap between merits and jurisdiction may not exist," the district court "might lack subject matter jurisdiction for non-merits reasons, in which case it must dismiss the case under Rule 12(b)(1)." *Id.* The district court should "rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction *do not implicate the merits of the plaintiff's cause of action*." *Morrison*, 323 F.3d at 925 (cleaned up).

Davis is a *pro se* litigant. Importantly, "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and [are] liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "But the leniency accorded *pro se* litigants does not

give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading to sustain an action." *Matthews, Wilson & Matthews, Inc. v. Capital City Bank*, 614 F. App'x 969, 969 n.1 (11th Cir. 2015) (citing *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)).

The Court considers the Motions in light of these standards.

### III.   DISCUSSION

#### A.  Jurisdictional arguments (Rule 12(b)(1))

Both Defendants argue that subject matter jurisdiction is lacking in this case. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). As such, "[a]ny time doubt arises as to the existence of federal jurisdiction, we are obliged to address the issue before proceeding further." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (vacating and remanding a summary judgment determination because the trial court failed to determine whether the controversy was justiciable). "Unless and until jurisdiction is found, both appellate and trial courts should eschew substantive adjudication." *Belleri v. United States*, 712 F.3d 543, 547 (11th Cir. 2013) (citation omitted).

##### i.   Claims against the Sheriff

The Sheriff argues that subject matter jurisdiction is lacking for three reasons: (1) Davis has been released from Broward Sheriff's Office ("BSO") custody rendering this case moot; (2) Davis lacks Article III standing as a result of his release; and (3) The abstention doctrine set forth in *Younger*

*v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) should apply. The Court considers each argument in turn.

### a. Mootness

Rule 12(b)(1) provides the proper framework for evaluating a motion to dismiss on grounds of mootness. *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007). "Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.' " *Mingkid v. U.S. Att'y Gen.*, 468 F.3d 763, 768 (11th Cir. 2006). "A federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, (1992)). "The doctrine of mootness derives directly from the case-or-controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.'" *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (quoting *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216-17 (11th Cir. 2000) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "Put another way, '[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" *Id.* Thus, "[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed. Indeed, dismissal is required because mootness is jurisdictional. Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276,

1282 (11th Cir. 2004); *see also Fla. Ass'n of Rehab. Facilities, Inc.*, 225 F.3d at 1217.

Here, the Court notes that Davis was released from BSO custody on February 15, 2022.[3] As such, to the extent that he seeks injunctive relief for his claims against the Sheriff, that relief is now moot based upon his release. A request for injunctive relief is moot if: "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Reich v. Occupational Safety & Health Review Comm'n*, 102 F.3d 1200, 1201 (11th Cir. 1997) (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625 (1979)). In this case, Davis has in effect received in part precisely the relief he requested—release from BSO custody. Thus, to the extent that his claims seek release from BSO custody, those claims are now moot.

### b. Standing

The Court must then determine whether Davis has standing with respect to his claims seeking additional injunctive and declaratory relief. "The party invoking federal jurisdiction bears the burden of proving standing." *Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004) (quoting *Bischoff v. Osceola Cnty.*, 222 F.3d 874, 878 (11th Cir. 2000)). "Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redress[a]bility." *Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d

---

[3] The docket sheet in this case indicates that Davis is now being held in immigration detention at Krome Service Processing Center. In addition, the Court takes judicial notice of Plaintiff's release record from the BSO, which is accessible at http://releaselog.sheriff.org/. *See* Fed. R. Evid. 201; *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (court may take judicial notice of public filings); *Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (courts may take judicial notice of public records, such as a complaint filed in another court).

1190, 1203 n.42 (11th Cir. 1991). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1277 (11th Cir. 2006)).

To seek injunctive relief, a plaintiff must demonstrate that he has standing by showing that: (1) he is under threat of suffering an injury-in-fact that is concrete and particularized; (2) the threat is actual and imminent, not conjectural or hypothetical; (3) the injury is fairly traceable to the challenged action of the defendant; and (4) it is likely that a favorable judicial decision will prevent or redress the injury. *See Summers v. Earth Island Institute*, 555 U.S. 448, 493 (2009). "Where the plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered, . . . the injury-in-fact requirement insists that a plaintiff 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)). "[A] plaintiff seeking declaratory or injunctive relief must allege and ultimately prove 'a real and immediate—as opposed to a merely hypothetical or conjectural— threat of *future* injury." *Id*; *see also A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co.*, 925 F.3d 1205, 1210–11 (11th Cir. 2019) ("[T]o demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory relief—as opposed to seeking damages for past harm—the plaintiff must allege facts from which it appears that there is a 'substantial likelihood that he will suffer injury in the future.'") (citation omitted).

In this case, Davis cannot satisfy the injury-in-fact requirement with respect to his claims for injunctive and declaratory relief. The SAC contains no allegations that he expects to be in BSO

custody in the future, or which would otherwise indicate that there is a substantial likelihood that Davis will suffer injury in the future caused by the Sheriff's alleged practice of posting an immigration detainer on his jail roster. Accordingly, Davis lacks standing to assert his claims for declaratory and injunctive relief. To the extent his claims seek such relief, those claims will be dismissed for lack of subject matter jurisdiction.

### c. *Younger* abstention[4]

The Sheriff's mootness and standing arguments sweep too broadly as the SAC also contains a prayer for damages. *See Cruz v. Estelle*, 497 F.2d 496, 499 (5th Cir. 1974) (a claim for money damages in violation of a litigant's civil rights is not rendered moot by release from confinement).[5] Nevertheless, the Sheriff argues that all claims should be dismissed because *Younger* abstention is warranted.

---

[4] The Eleventh Circuit has made clear that *Younger* abstention is not a jurisdictional doctrine. *See Walker v. City of Calhoun*, 901 F.3d 1245, 1254 (11th Cir. 2018) ("*Younger* is based not on jurisdiction, but the principles of equity and comity, and it commands that absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions." (quotations omitted)); *Davis v. Gregory*, ____ F. App'x ___, 2021 WL 2944462, at *1 (11th Cir. July 14, 2021) ("*Younger* abstention is not jurisdictional[.]"). Because it is not jurisdictional, courts are divided as to whether *Younger* abstention should be analyzed under Rule 12(b)(1) or Rule 12(b)(6). *See Parker v. Jud. Inquiry Comm'n of the State of Ala.*, 212 F. Supp. 3d 1171, 1174 n.1 (M.D. Ala. 2016) (discussing debate and collecting sources); *see also Pettway v. Marshall*, No. 5:19-CV-1073-KOB, 2019 WL 3752475, at *2 (N.D. Ala. Aug. 8, 2019) ("[W]hether courts should analyze the *Younger* abstention doctrine under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) is not entirely clear."). Courts often allow *Younger* abstention arguments to be "raised through a Rule 12(b)(1) motion," 5B Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure*, § 1350 at 96-100, and district courts in this Circuit often do so, *see, e.g.*, *Abusaid v. Hillsborough Cnty. Cir. Ct.*, No. 8:20-cv-121-T-33CPT, 2020 WL 6060928, at *2-3 (M.D. Fla. Oct. 14, 2020) (dismissing complaint pursuant to 12(b)(1) under *Younger* abstention); *Parker*, 212 F. Supp. 3d at 1174 ("For reasons to be discussed, both motions to dismiss are due to be granted, and this action is due to be dismissed under Rule 12(b)(1) based on *Younger* abstention."); *Moore v. Jud. Inquiry Comm'n of the State of Ala.*, 200 F. Supp. 3d 1328, 1331 (M.D. Ala. 2016) ("The court has considered the Defendants' *Younger* abstention argument to be appropriately raised under Rule 12(b)(1)."). The Court thus proceeds to analyze *Younger* abstention under 12(b)(1).

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

Upon review, the Court disagrees. According to the Eleventh Circuit, "*Younger* abstention applies to claims for injunctive relief, as well as to claims for declaratory judgment that would effectively enjoin state proceedings." *Davis*, 2021 WL 2944462, at *1 (citing *Old Republic Union Ins. Co. v. Tillis Trucking Co.*, 124 F.3d 1258, 1261 (11th Cir. 1997)). Here, because the Court has already found that Davis's claims for injunctive and declaratory relief are either moot or he lacks standing to assert them, the only remaining claims are for damages. And while *Younger* abstention may apply to claims raising constitutional challenges related to a state court proceeding, *Younger* abstention would not apply here, where Davis's claims for damages could not be brought in his state court criminal proceeding. *See Watson v. Fla. Jud. Qualifications Comm'n*, 618 F. App'x 487, 491 (11th Cir. 2015) (noting that when § 1983 claims for monetary damages could not be brought in the state proceeding or in the Florida Supreme Court's review of the proceeding, court lacked discretion to dismiss those claims under *Younger*).

The Court turns next to DHS's jurisdictional argument.

### ii.  Claim against DHS (Count 5 – violation of the APA)

Davis claims that ICE exceeded its statutory and constitutional authority when it issued detainers without probable cause, without providing notice, and without providing a sufficient mechanism for a subject to challenge the grounds for the detainer, which caused him to have an immigration hold that prevented him from being able to post bond on his state court charges. *See* ECF [44], ¶ 65B. DHS argues that the Court lacks subject matter jurisdiction over Davis's claim for violation of the APA because the detainer is not a "final agency action" under 5 U.S.C. § 704.

Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. In the Eleventh Circuit, "dismissal for the reason that the challenged agency action was not a final

order is a dismissal for lack of subject-matter jurisdiction." *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1255 (11th Cir. 2020) (citation omitted). A two-part test applies in order to determine whether an agency action is final for purposes of the APA; "[f]irst, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (quoting *U.S. Army Corps of Eng'rs v. Hawkes*, 578 U.S. 590, 597 (2016). "The core question about finality is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Id.* (quoting *Franklin v. Mass.*, 505 U.S. 788, 797 (1992)).

Here, DHS argues that the detainer is only a request, and that ICE has no legal authority to command the Sheriff to keep Davis in custody. The Court notes that Davis does not dispute that DHS cannot compel the Sheriff to comply with the detainer. Rather, he contends that ICE's failure to properly issue the detainer exceeds the authority granted to immigration officers. However, Davis's contention misses the mark.

First, the statute upon which Davis relies does not apply to him. *See* 8 U.S.C. § 1226. Indeed, the statute states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained *pending a decision on whether the alien is to be removed* from the United States." 8 U.S.C. § 1226(a) (emphasis added). The Court has already taken judicial notice of the fact that Davis was ordered removed by an immigration judge in 2012. *See* ECF No. [39] at 5 n.1. As such, Davis is subject to a final order of removal, and there is no decision pending upon whether he is to be removed. *See Creedle v. Miami-Dade Cnty.*, 349 F. Supp. 3d 1276, 1296 (S.D. Fla. 2018) (noting that "'an alien may be arrested and detained' by ICE while awaiting a removal

decision").[6] Another important factual distinction in Davis's case is that he does not allege that he was arrested by DHS/ICE or that his arrest resulted from the detainer—he alleges that he was arrested by the Hallandale Beach Police Department on state court felony charges.

Moreover, as DHS points out, the weight of authority supports the view that immigration detainers should not be considered to be final decisions for purposes of review under the APA. "8 C.F.R. § 287.7 does not compel state or local [law enforcement agencies] to detain suspected aliens subject to removal pending release to immigration officials . . . [it] merely authorizes the issuance of detainers as requests to local [law enforcement agencies]."[7] *Galarza v. Szalcyk*, 745 F.3d 634, 645 (3d Cir. 2014). As a result, a detainer may not properly be considered the end of the decision-making process such that it would give rise to a challenge under the APA. Davis's removal order would be considered a final order, but Plaintiff does not challenge that order, nor does it appear that he could. *See supra* n.5.

Accordingly, the Court lacks subject matter jurisdiction over Davis's APA claim asserted in Count 5.

**B.  Failure to state a claim under Rule 12(b)(6)**

The Sheriff and DHS also argue that Davis's remaining claims should be dismissed for failure to state a claim.

---

[6] In addition, to the extent that Davis is attempting to challenge the proceedings underlying his order of removal, he fails to allege an adequate basis upon which this Court may do so. *See* 8 U.S.C. § 1252(g) (stating that "no court shall have jurisdiction to hear nay cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . ."); *Auguste v. Att'y Gen.*, 118 F.3d 723, 725 (11th Cir. 1997).

[7] "A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." 8 C.F.R. § 287.7(a).

### i.  Claims against the Sheriff

Davis asserts the following claims against the Sheriff: Section 1983 for violation of the Fourth Amendment (Count 1); false imprisonment (Count 2); violation of article 1, section 12 of the Florida Constitution (Count 3); violation of article 1, section 9 of the Florida Constitution (Count 4); and violation of his right of access to the courts (Count 7). The Sheriff argues that those claims should be dismissed because the SAC is shotgun pleading, and dismissal is warranted pursuant to Rule 12(b)(6). The Court will briefly address the shotgun nature of the SAC and then each of Plaintiff's claims in turn.

### a.  Shotgun pleading

The Sheriff argues that the SAC is an impermissible shotgun pleading in three respects: (1) it incorporates all preceding allegations and counts into each successive count; (2) it includes legal conclusions without any factual allegations; and (3) Davis asserts claims against multiple defendants without specifying which defendant is responsible for each act, specifically naming the Sheriff and BSO, making it unclear if the claims are asserted against the Sheriff personally and BSO, or just BSO.

"A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x. 274, 277 (11th Cir. 2008) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1128-29 (11th Cir. 2001), *abrogated on other grounds as recognized by Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 n.10 (11th Cir. 2018)). "Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources. Moreover, justice is delayed for the litigants who are

'standing in line,' waiting for their cases to be heard." *Jackson*, 898 F.3d at 1356-57 (quoting *Cramer v. Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997)). Overall, shotgun pleadings do not establish a connection between "the substantive count and the factual predicates . . . [and] courts cannot perform their gatekeeping function with regard to the averments of [the plaintiff's claim]." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279-80 (11th Cir. 2006). Shotgun pleadings are condemned by the Eleventh Circuit, which has specifically instructed district courts to dismiss shotgun pleadings as "fatally defective." *B.L.E. v. Georgia*, 335 F. App'x 962, 963 (11th Cir. 2009) (citations omitted).

Upon review, while the SAC commits the classic sin of reincorporating previous counts into successive counts, the Court does not agree that it should be dismissed in its entirety as a shotgun pleading. First, Davis is a *pro se* litigant, and therefore entitled to considerable leniency. Notably, the Sheriff does not argue that his claims are unintelligible. Following a review of the SAC, the Court finds that such an outcome is unwarranted here. In addition, the contention that it remains unclear whether Davis intends to assert claims against the Sheriff personally or in his official capacity is belied by the SAC's allegations. Davis asserts that "Sheriff Tony is sued in his official capacity." ECF No. [44] ¶ 8. As such, the Court will not dismiss the SAC as a shotgun pleading.

### b. Fourth Amendment violation (Count 1)

In Count 1, Davis asserts that the reporting of an immigration hold on his jail roster constitutes a seizure and new arrest without probable cause. ECF No. [44] ¶ 50. Davis further asserts that BSO prevented him from securing the assistance of a bonding company to post bond and to be released on his criminal charges because bonding companies will not do business with individuals subject to immigration holds. *Id.* ¶ 51. As such, Davis claims that the policy and

practice of honoring ICE/DHS documents constitutes a seizure in violation of his Fourth Amendment rights.

The Sheriff argues that Davis was not "seized" pursuant to an immigration detainer. Rather, he was being held at the Broward County Jail because he had not posted bond in his state criminal proceeding for criminal charges against him. The Sheriff attaches a number of documents to his Motion, including Davis's order of removal, the immigration detainer, and various orders and filings from Davis's state criminal case. *See* ECF No. [66-1]. Davis also attaches several documents to the SAC, including an order entered by the state court regarding his bond. *See* ECF No. [44-1].

It is well-settled that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) ([A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.") (citation omitted). "Public records are among the permissible facts that a court may consider." *Universal Express, Inc.*, 177 F. App'x at 54 (citation omitted); *see also Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1077 at n. 9 (11th Cir. 2013) (taking notice of state court documents for purposes of a 12(b)(6) motion to dismiss regarding a § 1983 claim).

The detainer and bond documents are central to Davis's claims, and in conjunction with a

review of Davis's state court criminal docket, clarify the circumstances of his detention.[8] *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (district court properly took judicial notice of case documents that were public records "not subject to reasonable dispute" because they were "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.") (citations omitted). Upon review, the state court records reveal that Davis was arrested on September 14, 2017 on three charges, including two charges for sexual battery of a victim over 12 years of age. ECF No. [66-1] at 12. Davis posted bond on the two sexual battery charges on September 22, 2017. *Id.* at 10-11, 14-15. On September 26, 2017, the state attorney filed an information listing three new charges, including two counts of lewd or lascivious battery (Counts I and III) and one count for attempted lewd or lascivious battery (Count II). *Id.* at 18-19. Davis's arraignment on those charges was held on October 23, 2017, where he was remanded into custody on a capias which set bond on the new charges at $40,000.00 each for Counts I and III, and $20,000.00 as to Count II. *Id.* at 26-27. The immigration detainer was issued on October 23, 2017. *Id.* at 7-8. Nearly eight months later, on June 9, 2018, Davis filed a motion requesting that the state court reinstate the bond previously posted, which had been discharged upon the filing of the information containing the new charges. *Id.* at 29-30. The state court entered an order on June 14, 2018, stating that the bond on Counts I and III was to remain at $50,000.00 each and set bond on Count II at $5,000.00. *Id.* at 31. The court also stated that it would "accept Af[f]idavit to remain on Bond for Count[s] 1 and 3." *Id.* However, there is no indication on the record that Davis or the bond company provided the requisite affidavit and Davis remained in BSO custody.

       Davis contends that he remained in custody because the immigration detainer made it

---

[8] The Court has already taken judicial notice of the Broward County Circuit Court's online docket, which can be found at https://browardclerk.org/Web2. *See* ECF No. [39], at 5 n.2.

impossible for him to secure the services of the bonding company that posted the bond on his previous charges. While that may be true, there is no indication in his state court case record, nor does he allege, that the detainer had any impact upon the state court's decision on the bond issue.[9] Nor is there any indication, other than Davis's conclusory allegations, that he was being held by the Sheriff as a result of the detainer. Crucially, however, the Court need not accept as true "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd., v. Jaharis*, 297 F. 3d. 1182, 1188 (11th Cir. 2002); *see also Roberts v. State of Ala. Dept. of Youth Servs.*, 2013 WL 4046383, at *2 (M.D. Ala. Aug. 9, 2013) (Thompson, J.) ("[G]eneralizations, conclusory allegations, blanket statements, and implications will not" allow the complaint to survive a motion to dismiss). Conclusory allegations are those which express "a factual inference without stating the underlying facts on which the inference is based." *Conclusory*, Black's Law Dictionary (11th ed. 2019); *see also Allstate Ins. Co. v. Advanced Health Prof'ls, P.C.*, 256 F.R.D. 49, 61 (D. Conn. 2008) (Alberton, J.) ("These allegations are 'conclusory' because they 'express[ ] a factual inference without stating the underlying facts on which the inference is based.' "). Davis invites the Court to infer that the inability to secure his pretrial release is ultimately attributable to the immigration hold, and that the Sheriff should be held responsible. However, that inference is simply not plausible given the state court record.

This is not a case like *Alcocer v. Mills*, 906 F.3d 944, 952 (11th Cir. 2018), in which the plaintiff would have been released immediately upon posting bail, but for an alleged ICE detainer. In *Alcocer*, the plaintiff was arrested and detained for a misdemeanor driving offense. 906 F.3d at 947. Despite satisfying the bond requirements, she continued to be held by the county jail based on a suspicion that she was present illegally in the United States. *Id*. Here, Davis was not able to

---

[9] Ultimately, Davis entered a plea of *nolo contendere* on all three counts. He was placed on probation for a period of 10 years in a judgment filed on February 11, 2022.

satisfy the bond requirement, and as such, continued to be held as a result of his state court criminal charges.

The state court records reflect that Davis was arrested upon a capias issued with respect to the three charges pending against him in his state court case. He remained in custody—not because the detainer prevented him from being eligible for bond—but because he never posted a bond with respect to the new charges. *See* ECF No. [66-1] at 25-27, 29-31; *see also* the online docket for Case No. 17010564CF10A, accessible at https://browardclerk.org/Web2. Contrary to Davis's conclusory allegations, his failure to post a bond did not plausibly arise from the Sheriff's reporting of the immigration hold on his jail roster. Rather, Davis's failure to post a bond resulted from his inability to locate a willing bonding company. It may very well be true that no bonding company will do business with an individual subject to an immigration detainer, but such is not a policy that could plausibly be attributable to the Sheriff.

Accordingly, Davis fails to state a claim against the Sheriff for violation of his Fourth Amendment rights.[10]

### c. False imprisonment (Count 2)

Davis asserts in Count 2 that he is being falsely imprisoned as a result of the Sheriff reporting the immigration hold on his jail roster. False imprisonment is defined as "'the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty.'" *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006) (citation omitted). "In a false imprisonment action the plaintiff is required only to establish imprisonment contrary to his will and the unlawfulness of the

---

[10] Because Davis was not seized pursuant to the immigration detainer, the Court does not have occasion to consider the Sheriff's additional arguments with respect to the Fourth Amendment claim.

detention." *Id.* (quotations and citation omitted).

As set forth above with respect to Davis's Fourth Amendment claim, the SAC fails to plausibly allege the unlawfulness of Davis's detention. The public records reveal that Davis remained in the Sheriff's custody as a result of his inability to post bond with respect to the new state court charges, not as a result of the immigration detainer.

Accordingly, Davis fails to state a claim for false imprisonment.

### d.   Violations of the Florida Constitution (Counts 3 and 4)

In Counts 3 and 4, Davis asserts violation of article I, sections 9 and 12 of the Florida Constitution.[11] The Sheriff argues that Davis may not pursue a remedy for alleged violations of the Florida Constitution under § 1983. The Court agrees. There are two requirements in order to obtain relief under § 1983 – "(1) the conduct complained of must be committed by a person acting under color of state law; and (2) the conduct must deprive the plaintiff of rights or privileges secured by the Constitution or laws of the United States." *Walker v. Atlanta Police Dep't Public Affairs Unit*, 322 F. App'x 809, 811 (11th Cir. 2009) (citing *Rivers v. Campbell*, 791 F.2d 87, 839 (11th Cir. 1986)). Here, the rights Davis alleges were violated in Counts 3 and 4 do not arise from

---

[11] Article I, section 9 of the Florida Constitution states:

> **Due process**.—No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against oneself.

Article I, section 12 of the Florida Constitution states, in pertinent part, as follows:

> **Searches and seizures**.—The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.

violations of the United States Constitution or any other federal law. *See Ensley v. Soper*, 142 F.3d 1402, 1407 n.4 (11th Cir. 1998) (noting that a § 1983 claim may not be based solely on an alleged violation of non-federal law); *see also Almand v. DeKalb Cnty, Ga.*, 103 F.3d 1510, 1512 (11th Cir. 1997) (section 1983 "provides a remedy for deprivations of federal statutory and constitutional rights."). In addition, Davis's Florida constitutional claims stem from the incorrect conclusion that his detention arose as a result of the immigration detainer. Accordingly, Counts 3 and 4 fail to state a claim.

### e.  Access to the courts (Count 7)

In Count 7, Davis asserts a claim for denial of access to the courts. He alleges that he "has tried on many occasions to utilize the pro-se 'tools' (laptop to print) (phone to call legal resources); he was allowed a few times on good faith by just stating that he is pro-se; but then was shut down by Sergeant Williams of the Bravo shift." ECF No. [44] ¶ 32A. Davis also alleges that he requested documents be sent to BSO's legal department and complains that the law library is simply a paging system and not efficient. *Id*. ¶¶ 32D-E. Davis further alleges than there are no law books and that he has no direct access to case law. *Id*. ¶ 32F. Overall, Davis asserts that that the law library is not adequate, and the system makes research very difficult, if not nearly impossible. *Id*. ¶ 70B. The Sheriff argues that Davis fails to plead any facts to establish that he was deprived of the capability to pursue meritorious claims in the federal or state courts.

Prisoners have a right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). This right entails "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 351 (citation omitted). "However, in order to assert a claim arising from the denial of meaningful access to the courts, an inmate must first establish an actual injury." *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (citing *Lewis*, 518 U.S. at

349-50). "Actual injury may be established by demonstrating that an inmate's efforts to pursue a nonfrivolous claim were frustrated or impeded by a deficiency in the prison library or in a legal assistance program or by an official's action." *Id.* (citing, *inter alia*, *Lewis*, 518 U.S. at 351). "[T]he legal claim must be an appeal from a conviction for which the inmate was incarcerated, a habeas petition, or a civil rights action." *Bass v. Singletary*, 143 F.3d 1442, 1445 (11th Cir. 1998) (citing *Lewis*, 518 U.S. at 352-57). Furthermore, the claim "must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

"For instance, an inmate could show actual injury with proof that a court dismissed his action for failure to comply with a technical requirement unknown to the inmate due to deficiencies in the prison's assistance facilities, or that a claim could not be presented to a court because an inmate was so stymied by the law library's inadequacies that he could not prepare a complaint." *Barbour*, 471 F.3d at 1225 (citing *Lewis*, 518 U.S. at 351); *see also Wilson v. Blankenship*, 163 F.3d 1284, 1290 n.10 (11th Cir. 1998) (citing *Lewis*, 518 U.S. at 348). "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 352.

In the SAC, Davis refers only generally and in passing to his "right . . . to file section 1983 or *Bivens* claim, and work on his criminal case," ECF No. [44] ¶ 70B, but does not set forth any allegations that describe the claim he has been unable to present, or the specific official acts frustrating his attempts to present such a claim. Indeed, the record demonstrates that Davis has been able to present his claims before this Court and the Eleventh Circuit. In addition, Davis has not alleged that he has no access to any relevant materials, but simply that the process through which he has access is inefficient--"the request[s] are sent out on Sundays and returned the

following week Mondays, slowing down research, and limited on copies." *Id.* ¶ 32F. While the Court is sympathetic to his frustrations, the allegations fall short of establishing an actual injury for purposes of his claim for denial of access to the courts.

Accordingly, Count 7 fails to state a claim.

### ii.  Claims against DHS (Count 6 – Fourth Amendment seizure)

In Count 6, Davis asserts a claim against DHS for violation of his Fourth Amendment rights. Similar to his claim against the Sheriff, Davis claims in the SAC that the detainer caused a seizure or new arrest because it precluded him from posting bail, as no bond companies will conduct business with individuals who have immigration holds on their jail rosters. DHS argues that Davis fails to state a claim for a Fourth Amendment violation because ICE did not seize him or cause another entity to seize him.

Upon review, the Court agrees. First, as the Court has already noted, DHS does not have the authority to compel a local law enforcement agency to comply with an immigration detainer. As a result, DHS cannot plausibly be responsible for the Sheriff's decision to hold an individual based upon a detainer or to report a detainer on the jail roster. Second, the record in Davis's case reveals that he was not in fact held in BSO custody pursuant to the immigration detainer, but as a result of his pending state court criminal charges. As pleaded, Davis's claimed injury arises from the bonding company's unwillingness to post bond because of his immigration detainer, for which he seeks to hold DHS responsible. However, this contention is not plausible for the same reason that DHS cannot plausibly be responsible for BSO's decision to report his immigration detainer on the jail roster.[12]

---

[12] As DHS points out, to the extent that Davis's claim attempts to challenge the issuance of the detainer in the first instance, even assuming the propriety of such a challenge here, the record in this case indicates that Davis is subject to a final order of removal. According to the Immigration and Nationality Act ("INA"),

Accordingly, Davis fails to state a claim against DHS for violations of the Fourth Amendment.

### C. Leave to Amend

Although Davis has not requested leave to file an amended pleading, the Court nevertheless considers whether leave to amend is warranted.

Generally, Rule 15 of the Federal Rules of Civil Procedure governs amendment to pleadings. Apart from initial amendments permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. However, "[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

"[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999); *see Dysart v. BankTrust*, 516 F. App'x 861, 865 (11th Cir. 2013) (same); *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999) ("When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail."); *Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss."); *Aguilar v. United Floor Crew, Inc.*, No. 14-cv-61605,

---

detention is mandated for an individual who has been ordered removed. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien.").

2014 WL 6751663, at *2 (S.D. Fla. Dec. 1, 2014) (same). In any event, "the grant or denial of an opportunity to amend is within the discretion of the District Court . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, the Court concludes that any further amendment of Davis's claims would be futile. To the extent he seeks declaratory or injunctive relief, Davis either lacks standing or those claims are now moot based upon his release from BSO custody. In addition, he cannot allege a violation of his rights pursuant to § 1983 as a result of the immigration detainer, where his allegations are contradicted by the public records. Those records indicate that Davis was in BSO custody in relation to the criminal charges pending against him in state court, and not as a result of the immigration detainer.

## IV.     CONCLUSION

For the foregoing reasons, the Motions, **ECF Nos. [64]**, **[66]**, are **GRANTED IN PART AND DENIED IN PART**. Davis's claims for injunctive and declaratory relief and Count 5 are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. The remaining counts—Count 1, Count 2, Count 3, Count 4, Count 6, and Count 7 are **DISMISSED WITH PREJUDICE**. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 25, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Case No. 20-cv-60677-BLOOM

Copies to:

Counsel of Record

Peter Davis, *pro se*
A#097807034
Krome Service Processing Center
Inmate Mail/Parcels
1820 SW 12th Street
Miami, Florida 33194